Magistrate Judge

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>PARK HUNG QUAN,<br><br>Defendant. | NO. MJ19-343<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Andrew C. Friedman and Steven T. Masada, Assistant United States Attorneys for said District, files this memorandum in support of its motion to detain Defendant Park Hung Quan pending resolution of the criminal matter.

## I.   INTRODUCTION

On July 29, 2019, Defendant Park Hung Quan was arrested after having been found in possession of more than a dozen firearms and explosive material. The same day, he made his initial appearance in this Court, charged by complaint with the offense of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1). The United States filed a motion for pretrial detention, and now files this

MEMORANDUM IN SUPPORT OF DETENTION - 1
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

memorandum in support, in advance of Quan's detention hearing scheduled for August 1, 2019.

As discussed below, Quan, a multiple-time felon with a record of violence, poses a significant danger to the community and a risk of non-appearance. Accordingly, the Court should order him detained.

## II. BACKGROUND

### A. Quan's Criminal Background

Park Hung Quan has at least three prior felony convictions, all related to the illegal possession or attempted possession of weapons. One of those weapons convictions stemmed from his involvement in an attempted murder-for-hire plot here in Western Washington. More specifically,

- In the early 1970s, Quan, while enlisted in the military, was convicted by court-martial of soliciting the theft of military weapons and attempting to steal military weapons. According to Pretrial Services, Quan was sentenced to approximately five years in custody at Fort Leavenworth.

- On about November 4, 1983, Quan was convicted of *Felon in Possession of Explosives*, in the Western District of Washington, Case No. CR83-00039. As alluded to above, this conviction arose from Quan's involvement in a contract murder plot, as described in an old Seattle Times article:

**Three charged with attempted truck bombing**

Three Seattle-area men linked to an attempted truck bombing in Ocean Shores in 1980 have been charged with conspiring to make a firearm out of stolen explosives.

Dick F. Inglis, 59, a self-employed log broker from Bellevue; Jack W. Karr, 64, self-employed, of Seattle; and Park Hung Quan, 31, a West Seattle grocery-store employee, were ordered held on $50,000 bail each yesterday by a federal magistrate in Tacoma.

Named as unindicted co-conspirators in the same indictment were Michael John Shimmin and Barbara Neyman. The conspiracy allegedly occurred between April 1980 and July 5, 1980.

The investigation began when Richard A. Conner, a former Seattle resident, found a four-stick dynamite bomb under his pickup truck when he returned from an Ilwaco fishing trip. The device had malfunctioned, according to the federal Bureau of Alcohol, Tobacco and Firearms.

The motive for the attempted truck bombing was not clear, but a source indicated that it was related to the fact that Neyman and Conner were once married.

The indictment said Inglis accompanied Neyman to her Mercer Island bank in June 1980, when she withdrew $1,000. Two days later, she gave the money to Karr, according to the indictment.

Next, Shimmin transferred stolen explosives to Quan, alias "Harry," according to the indictment. In addition to the conspiracy charge, Quan, who has a criminal record, is charged with knowingly receiving explosives which had been shipped across state lines and which he knew or should have known were stolen.

MEMORANDUM IN SUPPORT OF DETENTION - 2
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Quan or a compatriot strapped a bomb, incorporating four sticks of dynamite, to the
2  undercarriage of the target's truck.  The attempted murder failed only because the bomb
3  malfunctioned.
4        Quan cooperated with the government against his co-conspirators.  As part of his
5  plea arrangement, he was allowed to plead guilty to only the explosives possession
6  charge.  Even after receiving cooperation consideration, Quan received a 10-year
7  custodial sentence.
8      •    On about May 23, 1991, Quan was convicted of *Unlawful Possession of*
9  *Unregistered Firearm (Machine Gun and Silencers)*, in the U.S. District Court for the
10 Southern District of Texas, Case No. CR91-0041.  Notably, according to currently
11 available records, Quan committed this firearm offense on about January 15, 1991 ---
12 shortly after his release from Bureau of Prisons (BOP) custody and while on federal
13 supervised release for his prior conviction.

14 **B.     Quan's Current Possession of Firearms and Explosive Material**

15       On July 29, 2019, FBI agents searched Quan's South Seattle residence pursuant to
16 a search warrant relating to the conduct of one of his housemates ("Person 1").  Five
17 co-habitants, including Quan, resided in the modest three-bedroom residence.  As law
18 enforcement was aware, Person 1 was the subject of one or more restraining orders and
19 had made express threats to harm others and herself.  In fact, in late May 2019, Person 1
20 had threatened to "shoot up" the office of a California social media company.[1]  A copy of
21 a Seattle Police Department report is filed separately under seal as Exhibit A.  Authorities
22 also were aware of Quan's felon status.
23       Within Quan's bedroom, agents located what can fairly be described as an arsenal
24 of weapons, ammunition, and explosive material, largely unsecured and accessible to his
25 housemates.  More specifically, the more-than-a-dozen firearms included several assault
26 rifles, a sniper rifle, and hand guns.  Some of the guns were loaded, including one with a

---

[1] The company is aware of and reported the threat.

MEMORANDUM IN SUPPORT OF DETENTION - 3
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  high capacity magazine.  Further, some of the guns appear to be illegal firearms (e.g., short-
2  barreled).







MEMORANDUM IN SUPPORT OF DETENTION - 4
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970






MEMORANDUM IN SUPPORT OF DETENTION - 5
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970







 

MEMORANDUM IN SUPPORT OF DETENTION - 6
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Quan's bedroom also contained, among other things, the following:

- bump stocks, which are designed to be attached to semiautomatic firearms in place of conventional stocks, enabling them to fire bullets more rapidly, mimicking a full automatic weapon





- two 37 mm "flare launchers," which can be used to shoot a variety of projectiles



MEMORANDUM IN SUPPORT OF DETENTION - 7
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- high-capacity magazines and a large cache of ammunition





- inert replica grenades, chemical precursors and explosive powder.



MEMORANDUM IN SUPPORT OF DETENTION - 8
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In a post-arrest interview, Quan told agents that the bedroom and the firearms were his. He further acknowledged that he knew it was illegal for him to possess such items based on his prior felony convictions. Quan also stated that he had acquired the bump stocks before they became illegal (thereby implicitly confessing knowledge of his illegal possession).

While the five residents were temporarily restrained outside the residence, FBI agents heard Quan say that he had not yet gotten the chance to mix the precursors for "RDX," prompting one of the housemates to say, "shhhhh, shut up." Shortly thereafter, Quan said that he should have moved the acetone, prompting the same housemate to say, "Shut up, man." "RDX" is an explosive chemical compound (*see, e.g.,* https://en.wikipedia.org/wiki/RDX), and acetone is a commonly-used precursor for explosives (*see, e.g.,* https://en.wikipedia.org/wiki/Acetone_peroxide).

### III.   DISCUSSION

Defendant Quan poses both a significant danger to the community and a risk of non-appearance. Pretrial Services has indicated that it will recommend detention for Quan. The United States strongly concurs.

**A.   The Legal Standard**

18 U.S.C. § 3142(f)(i)(E) provides that the court shall "hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] and the safety of any other person and the community" in any case that "involves the possession or use of a firearm." 18 U.S.C. § 3142(g) provides that, the court

> shall . . . take into account
>   (1)  the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a firearm, explosive, or destructive device;
>   (2)  the weight of the evidence against the person;
>   (3)  the history and characteristics of the person . . . and
>   (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

MEMORANDUM IN SUPPORT OF DETENTION - 9
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Each and every one of these factors counsels strongly for detention in this case. Indeed, it would be difficult to imagine a stronger case for detention.

**B.     Danger to the Community**

Quan should be detained as a danger to the community. Considering the § 3142(g) factors: First, Quan is charged with a firearm offense – possession of one firearm, that was part of a dangerous arsenal. That arsenal included assault rifles (some of which appear to be illegal), a sniper rifle, and hand guns; stockpiles of ammunition; and high-capacity magazines. Quan also possessed multiple bump stocks, which serve no purpose other than to enable rapid, automatic-style firing. Following the recent mass shooting in Las Vegas, where a bump stock allowed a shooter to kill more than 50 people, they are illegal to possess. And, Quan had explosive powders and chemical precursors. While detained during the search, Quan quipped that he had not yet mixed the "RDX," a highly explosive compound.

Second, the weight of the evidence is overwhelming. Not only were all of these weapons found in Quan's bedroom, but Quan confessed both to possessing the weapons, and to knowing that it was illegal for him to do so. Third, Quan's history and characteristics confirm that he is a danger. Quan has three prior firearms and/or explosives convictions. One involved military weapons, one involved a machinegun, and the most troubling one involved possession of explosives that Quan possessed as part of a murder-for-hire plot. Many defendants are charged with firearms crimes – Quan is the rare defendant whose criminal history proves his willingness to use those weapons to kill.

Fourth, the danger posed to the community cannot be underestimated. Of note, Quan left his weapons unsecured, accessible to others. And he did so even though he was aware that his housemate, Person 1, suffered from mental-health issues, and that Person 1 had threatened to commit suicide-by-cop and a mass shooting at a corporate campus. Quan's reckless indifference placed countless people and the community at risk. Quan's own demonstrated willingness to use weapons himself to harm others confirms the danger to the community that would result from his release. We live in an age in which

MEMORANDUM IN SUPPORT OF DETENTION - 10
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

mass shootings at times tragically seem like a daily event. Quan not only has demonstrated the willingness to kill others, but he had assembled the arsenal to do so.

Nor does it matter that law enforcement has seized the weapons found in Quan's residence. Quan has demonstrated that he remains undeterred, despite repeated arrests and convictions. A court martial did nothing to persuade Quan to follow the law. Rather, not long after his release, he engaged in the murder plot. Nor did a 120-month federal sentence from this District deter him. Shortly after his release, and while on federal supervision, Quan was arrested, charged and convicted for possessing a machine gun.

Although it is true that more than 25 years have passed since Quan's last conviction, it is almost certain that Quan has illegally possessed guns and/or explosives for a substantial part of that time, given the remarkable size and variety of his arsenal. And it is certain that, if released, Quan would have the ability to acquire additional firearms, thereby posing a serious danger to the community.

## C. Risk of Flight

In addition to being a danger, Quan also poses a serious risk of nonappearance. He has demonstrated no ability to abide by the law, and offered no sound rationale why court-imposed conditions would fair differently. Quan faces multiple anticipated firearms and explosives charges, as well as possible other criminal violations. If convicted after trial, particularly given his criminal history, Quan faces a significant custodial sentence. Given his current age (66), that sentence is even more serious.

Moreover, the evidence is strong, if not overwhelming, which contributes to Quan's incentive to flee. The contraband weapons, explosives, and related items were recovered from Quan's bedroom --- many in plain view. Quan, in a post-arrest statement, admitted that the firearms belonged to him and that he knew they were illegal to possess.

Quan also has no viable release plan, which undermines any realistic community supervision (and contributes to his risk of non-appearance and risk to the community). He cannot return to his residence, as each of the remaining housemates are potential fact witnesses in his criminal case. For instance, at least one housemate has made statements

MEMORANDUM IN SUPPORT OF DETENTION - 11
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to the media that the firearms belonged to Quan.  The United States is unaware of any alternative arrangements available to Quan.

If released, Quan would have tremendous incentive to flee that cannot be adequately addressed by court-imposed conditions of release.  For instance, as courts have repeatedly recognized, electronic monitoring has many uses, but it does not prevent flight.  *See, e.g., United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) ("Nor does the wearing of an electronic device offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction.  When a monitoring device is removed or cut (which is what occurs when individuals flee.

## IV.    CONCLUSION

In short, every one of the § 3142(g) factors weighs heavily in favor of detention.  Most significantly, Quan, who has a demonstrated history of willingness to resort to violence, was found in possession of an arsenal suitable for mass killing.  If Quan were released, Quan no doubt could acquire additional weapons, as he has following each prior conviction.  No conditions that the Court can impose adequately could protect the community.  As a result, the Court should order Quan detained.

DATED this 31st day of July, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

 // s // Andrew C. Friedman
// s // Steven T. Masada

ANDREW C. FRIEDMAN
STEVEN T. MASADA
Assistant United States Attorneys

700 Stewart Street, Suite 5220
Seattle, WA 98101-1271

MEMORANDUM IN SUPPORT OF DETENTION - 12
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Kathleen M. McElroy*
KATHLEEN M. McELROY
Paralegal Specialist
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Fax:      206-553-0882
E-mail: Katie.McElroy@usdoj.gov

MEMORANDUM IN SUPPORT OF DETENTION - 13
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970