THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>        v.<br><br>PARK HUNG QUAN,<br><br>                          Defendant. | CASE NO. CR19-0148-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Park Hung Quan's motion for compassionate release (Dkt. No. 71), the parties' motions to seal (Dkt. Nos. 72, 80),[1] and the Government's motion for leave to file an overlength brief (Dkt. No. 78). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Defendant's motion for compassionate release (Dkt. No. 71) and GRANTS the parties' motions to seal and for leave to file an overlength brief (Dkt. Nos. 72, 78, 80) for the reasons explained herein.

I.   **BACKGROUND**

Between 1973 and 1997, Defendant Park Hung Quan was convicted of three felonies

---

[1] Mr. Quan has also filed a motion to seal exhibits to his reply brief (Dkt. No. 84), but the motion is not ripe yet. The Court will rule on this motion by separate order on or after the noting date.

ORDER
CR19-0148-JCC
PAGE - 1

involving the possession of guns and explosives and served a total of almost 20 years in prison for these crimes. (Dkt. No. 52 at 5–6.) At some point following his 1997 release, he again began obtaining firearms and amassed a large collection of military-style weapons and ammunition. (Dkt. No. 48 at 5.) Law enforcement officers discovered Mr. Quan's collection in July 2019 while executing a search warrant targeting his housemate for unrelated criminal activity. (*Id.* at 6.) Officers found 12 firearms, including assault rifles, a sniper-style rifle, and semiautomatic pistols; two bump stocks; multiple high-capacity magazines; thousands of rounds of ammunition; two flare launchers; and three containers of a low explosive black powder substitute. (*Id.* at 6–7.) Some of the firearms were loaded, including a semiautomatic rifle loaded with a high-capacity magazine. (*Id.* at 7.)

The Government charged Mr. Quan with one count of felon in possession of a firearm, (Dkt. Nos. 1, 14), and he pleaded guilty in June 2020, (Dkt. Nos. 46, 48, 50). Pursuant to the plea agreement, the parties jointly recommended a below-guidelines range sentence of 48 months based in part of Mr. Quan's age (68 years old) and health concerns.[2] (Dkt. Nos. 60, 61.) In October 2020, the Court sentenced Mr. Quan to 48 months of imprisonment followed by three years of supervised release. (Dkt. No. 65.)

While in Bureau of Prisons ("BOP") custody, Mr. Quan was diagnosed with prostate cancer. (Dkt. No. 73 at 3.) He started hormone deprivation therapy in early October 2020 and anticipated starting radiation therapy two to three months later. (*Id.* at 8–9, 12–13.) Radiation was postponed, however, because Mr. Quan tested positive for COVID-19 in late December and the BOP decided to transfer him from FDC Seatac to Butner FMC by the end of February to resume his cancer treatment at a federal medical facility.[3] (*Id.* at 15; Dkt. Nos. 81 at 2–3, 82 at 7.) Among other medical conditions, Mr. Quan also suffers from Chronic Obstructive Pulmonary

---

[2] The guideline imprisonment range was 78 to 97 months. (*See* Dkt. No. 52 at 10.)

[3] Mr. Quan did not experience severe COVID-19 symptoms and tested negative for the virus in early February. (*See* Dkt. Nos. 73 at 15, 84-2 at 2.)

1   Disease (COPD). (*See* Dkt. Nos. 73 at 18–22, 84-2 at 2.)

2         Mr. Quan moves for compassionate release, arguing that his need for prompt cancer
3   treatment and his elevated risk of complications from COVID-19 due to his age, cancer, and
4   COPD are extraordinary and compelling reasons to reduce his sentence. (*See generally* Dkt. No.
5   71.) He has served just over 18 months of his sentence, and his projected release date is
6   December 24, 2022. (Dkt. Nos. 71 at 3, 79 at 5.)

7   **II.     DISCUSSION**

8       **1.   Motion for Compassionate Release**

9         The Court may reduce a term of imprisonment only if "extraordinary and compelling
10  reasons warrant such a reduction," "such a reduction is consistent with applicable policy
11  statements issued by the Sentencing Commission," and the Court considers the 18 U.S.C.
12  § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A)(i).[4] The defendant bears the burden of making this
13  showing. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020). Although the Ninth
14  Circuit has not directly addressed the issue, four Courts of Appeals have held that the Sentencing
15  Commission's relevant policy statement, United States Sentencing Guidelines ("USSG")
16  § 1B1.13, is not "applicable" to a motion for a reduction in sentence filed by a defendant directly
17  (rather than by the Bureau of Prisons) and therefore does not constrain the Court's discretion. *See*
18  *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *United States v. Gunn*, 980 F.3d
19  1178, 1180 (7th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); *United*
20  *States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). Even if the policy statement is not binding,
21  the Court may consider it in the exercise of its discretion. *See Gunn*, 980 F.3d at 1180. The
22  policy statement recommends that courts not reduce sentences of individuals who would present

23  ―――――――――――

24  [4] As a threshold matter, a defendant must also satisfy 18 U.S.C. § 3582(c)(1)(A)'s exhaustion
    requirement by first presenting a request for a reduced sentence to the warden of his or her
25  facility and waiting 30 days (or exhausting administrative remedies before the 30-day waiting
    period expires) before seeking relief from the court. *See United States v. Taylor*, 2020 WL
26  7383648 (6th Cir. 2020). Mr. Quan has satisfied this requirement. (*See* Dkt. No. 71-1 at 7–10.)

ORDER
CR19-0148-JCC
PAGE - 3

a danger to the community upon release, USSG § 1B1.13(2), and the Court finds that to be an appropriate consideration. *See United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) (affirming denial of a motion for reduction in sentence because the defendant was a danger to the community).

Mr. Quan argues that his prostate cancer and delays in his treatment amount to extraordinary and compelling reasons to reduce his sentence. (*See* Dkt. No. 71 at 7–8.) He also argues that because of his cancer, COPD, and age, he has an increased risk of severe illness if he contracts COVID-19 again. (*Id.*) The Government opposes, arguing that (1) there are no extraordinary and compelling reasons warranting a sentence reduction because Mr. Quan is receiving adequate medical care for his cancer and likely has immunity to COVID-19 from his previous infection, (2) Mr. Quan remains a danger to the community if released, and (3) the § 3553(a) factors do not support a sentence reduction. Because, as discussed below, the Court finds that Mr. Quan would pose a danger to the community if released and the § 3553(a) do not support a sentence reduction, the Court need not decide whether Mr. Quan has made a showing of extraordinary and compelling reasons.

In determining whether Mr. Quan would present a danger to the community upon release, the Court looks to the nature and circumstances of his underlying offense, the weight of the evidence against him, his history and characteristics, and the nature of the danger that his release would pose to any person or the community. 18 U.S.C. § 3142(g). Mr. Quan's crime was very serious. He possessed numerous firearms and also had a significant store of ammunition for each firearm, along with accessories like bump stocks and flare launchers that increased their potential lethal potency. The circumstances of the crime are even more serious in view of Mr. Quan's criminal history, which includes a 1973 conviction by court-martial for soliciting the theft of military weapons and attempting to steal military weapons, a 1983 conviction for being a felon in possession of explosives, and a 1991 conviction for the unlawful possession of an unregistered firearm (specifically, a machine gun and silencers). (Dkt. No. 52 at 5–6.) The 1983 conviction is

especially concerning because it stemmed from Mr. Quan's participation in a murder-for-hire plot, where he attached a bomb to the undercarriage of the intended target's vehicle. (*Id.* at 6.) Overall, Mr. Quan's history demonstrates a strong affinity for highly dangerous weapons that can inflict devastating harm and a pattern of disregard for the laws that prohibit him from possessing them. Under these circumstances, the Court FINDS that Mr. Quan would pose a danger to the safety of the community if released. *See* USSG § 1B1.13(2).

Moreover, the Court weighed the § 3553(a) factors, and took into account Mr. Quan's age and medical conditions, when sentencing him just a few months ago. The § 3553(a) factors include the nature and circumstances of the underlying offense, the need for the sentence imposed, the kinds of sentences available, the applicable sentencing range, pertinent policy statements, and avoidance of sentencing disparities. *See* 18 U.S.C. § 3553(a). There has been no material change to those factors. As was the case in October, a significant term of custody is still needed to adequately reflect the seriousness of Mr. Quan's offense, promote respect for the law, provide just punishment and deterrence, and protect the safety of the community. At this point, Mr. Quan has served less than half of his sentence, factoring in good time credit. Such a significant reduction in his custodial sentence would undermine the purposes of sentencing. Accordingly, the Court FINDS the § 3553(a) weigh against release and DENIES Mr. Quan's motion for compassionate release (Dkt. No. 71).

**2. Motions to Seal and Motion to File Overlength Brief**

Mr. Quan and the Government move to maintain under seal exhibits containing Mr. Quan's medical records. (Dkt. Nos. 72, 80) Mr. Quan also moves to maintain under seal an archived court record with confidential aspects of his plea agreement and a copy of the Presentence Investigation Report in this matter. (Dkt. No. 72.) The Court starts from the position that "[t]here is a strong presumption of public access to [its] files." W.D. Wash. Local Civ. R. 5(g)(3); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). To overcome that presumption, a party seeking to seal a judicial record must show "compelling reasons" to seal the

1  record if it relates to a dispositive pleading. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d
2  1172, 1180 (9th Cir. 2006). Here, the exhibits contain Mr. Quan's confidential and highly
3  personal medical information. (Dkt. Nos. 73, 82.) The Court FINDS that there is a compelling
4  interest in maintaining the confidentiality of such records and that interest outweighs the public's
5  interest in their disclosure. *See Kamakana*, 447 F.3d at 1179.

6  Additionally, the Government moves to file a 16-page response brief (Dkt. No. 78). The
7  Court FINDS that a response brief of this length is reasonable in these circumstances and
8  GRANTS the motion.

9  **III.  CONCLUSION**

10  For the foregoing reasons, the Court DENIES Mr. Quan's motion for compassionate
11  release (Dkt. No. 71), GRANTS the parties' motions to seal (Dkt. Nos. 72, 80), and GRANTS
12  the Government's motion for leave to file an overlength brief (Dkt. No. 78). The Clerk is
13  DIRECTED to maintain Docket Numbers 73 and 82 under seal.

14  DATED this 17th day of February 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE